IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Annie Maria Leggett, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 13 C 05847 |
| ) | |
| vs. ) | |
| ) | |
| Louis Capra & Associates, LLC, et al., ) | |
| ) | Judge Philip G. Reinhard |
| Defendants. ) | |

**ORDER**

For the reasons stated below, plaintiff's ADA (Count I) and FHA (Count II) claims are dismissed for lack of subject matter jurisdiction. Plaintiff's 15 U.S.C. § 1692f(1) claim (set forth in Count VIII), to the extent it involves the right to possession or amounts awarded in the October 28, 2011 state-court judgment, is dismissed for lack of subject-matter jurisdiction. Plaintiff's remaining FDCPA claims (set forth in Count VIII) are dismissed with prejudice for failure to state a claim upon which relief can be granted. The court declines to exercise supplemental jurisdiction over the state-law claims (Counts III, IV, V, VII, and IX) and they are dismissed without prejudice. This case is terminated.

**STATEMENT-OPINION**

Plaintiff, Annie Maria Leggett, on behalf of herself and all others similarly situated[1] (as to all counts but Count IX), and the State of Illinois ex rel Annie Maria Leggett (as to Count IX only), brings this action via her first amended complaint [53] against defendants, Louis Capra & Associates, LLC, an Illinois limited liability company ("LLC"), Louis Capra[2], and Michael McCarthy. Plaintiff asserts three federal claims: 1) a violation of the American's with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (Count I); 2) a violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq. (Count II); and, 3) a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Count VIII). She also asserts state law

---

[1] The complaint alleges claims are being brought on behalf of various classes but no class action has been certified and no motion for certification is pending. Plaintiff filed a motion to certify [16] while the original complaint was pending in the Eastern Division but that motion was stricken [20] without prejudice to reinstate prior to the transfer of this case to the Western Division. No motion for class certification has since been filed.

[2] The LLC and Louis Capra are referred to herein as the "Capra Defendants".

1

claims for violations of the City of Rockford Fair Housing Code (Count III), Illinois Security Deposit Interest Act, 765 ILCS 715/0.01 et seq. (Count IV), Illinois Security Deposit Return Act, 765 ILCS 710/0.01 et seq. (Count V), Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (Count VII[3]) and a qui tam action under the Illinois Reward and Whistleblower Protection Act, 740 ILCS 175/4 (Count IX). Jurisdiction is premised on federal question jurisdiction (28 U.S.C. § 1331) for Counts I, II and VIII. Jurisdiction for the remaining counts (III, IV, V, VII, and IX) is asserted pursuant to the court's supplemental jurisdiction (28 U.S.C. § 1367 (a)). Defendants Louis Capra and Louis Capra & Associates, LLC move [54] to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). McCarthy separately moves [69] to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) asserting the claims against him were discharged in bankruptcy.

The facts are taken from plaintiff's first amended complaint and the exhibits attached to it. At all times relevant, Capra was the member-manager of the LLC and McCarthy was the property manager for the subject property. Plaintiff entered into a written lease agreement for an apartment on or about November 1, 2010.[4] The terms of this lease agreement were the same or substantially similar to the terms of a second written lease which is attached as an exhibit to the first amended complaint. This document ("Second Lease"), captioned "Rental Contract", is dated October 30, 2011. On the first page, it identifies "Louis Capra & Associates" as the lessor/landlord. Near the top of the page Michael McCarthy is identified as "Property Manager." On the rental contract's signature line for the Lessor is the signature "Louis Capra." Numerous riders and attachments filed by plaintiff as exhibits to the complaint are also signed on the line identifying the lessor with the name "Louis Capra." A document captioned "Termination of Tenancy" has "Louis Capra & Associates" typed above a signature line. The signature line contains the signature "Louis Capra" and the word "Owner" is typed under the signature line. A document captioned "Crime Free Lease Addendum" contains the signature "Louis Capra" on a line designated "Owner/Manager's Signature."

At all times during her tenancy, plaintiff was a beneficiary of housing assistance payments through the Rental Housing Support Program of the Illinois Housing Development Authority. Throughout her tenancy, government assistance constituted approximately $458.00 of plaintiff's $615.00 monthly rent. Plaintiff paid the rest. On or about October 30, 2011 (the commencement of the Second Lease), plaintiff paid defendants a security deposit of $615.00. Plaintiff never received interest on this security deposit.

---

[3] Plaintiff voluntarily nonsuits the claims she had set forth in Count VI of her original complaint so this first amended complaint does not contain a Count VI.

[4]This lease agreement is not attached to the complaint. Plaintiff alleges it was "damaged, discarded, or destroyed" by defendants when they locked plaintiff out of her apartment on July 7, 2012.

On or about October 18, 2011, Capra and McCarthy, in their own names filed, pro se, a forcible entry and detainer case against plaintiff in state court seeking possession of the property (3775 Trilling # 208) and $2012.00 in rent due. On October 28, 2011, the state court entered a judgment granting Capra and McCarthy possession of the property and awarding them $2000. They did not enforce this judgment to evict plaintiff from the property, but instead, the Second Lease was entered on October 30, 2011.

Eight months later, on June 25, 2012, Capra and McCarthy moved "to reinstate expired order for possession." In their motion and notice of motion they listed the wrong address for the property and requested possession of the wrong property. They incorrectly listed the property and plaintiff's address as 3735 Trilling # 208. The notice of motion provided the affirmation of McCarthy that he had mailed a copy of the motion "to each party's respective last known address." Plaintiff alleges Capra and McCarthy "never served the notice and motion upon the plaintiff at the subject matter property." On July 2, 2012, the state court entered an order ("2012 Order") granting the "motion to reinstate expired order for possession from 10/28/11." This order correctly identified the property as 3775 Trilling #208.

The complaint alleges that on July 7, 2012, Capra and/or McCarthy, changed the locks on plaintiff's apartment, removed her personal property from it and "damaged, destroyed, or otherwise rendered unusable" plaintiff's personal property and that the sheriff was not present when defendants locked plaintiff out of her apartment.[5] Plaintiff left the subject property in the same or substantially similar condition as when she moved in, subject to normal wear and tear. On July 28, 2012, defendants sent plaintiff a letter advising that her security deposit had been forfeited because she had not given written notice to vacate 60 days prior to the expiration of her lease. The stated expiration date of the Second Lease was October 30, 2012. Plaintiff only vacated the premises because she was locked out by defendants.

On July 2, 2013, one year after the entry of the 2012 Order, the state court entered an order ("2013 Order") granting Leggett's petition to vacate the 2012 Order as void. In the 2013 Order, the state court found the 2012 Order was void "because the matters relevant to said order are purely statutory in nature, and the statute was not followed." The 2013 Order also provided that Leggett "withdraws her request for restoration of the subject premises; [Capra & McCarthy] are entitled to possession of said premises."

Both leases included a rider entitled "Ability To Live Independently Clause." The rider contained the following language: "A condition to admission and continued occupancy is that the TENANT must possess the ability to live independently, i.e. the ability either in conjunction with available supportive services or otherwise, to maintain their person and/or apartment in a manner which is not detrimental to the TENANT's safety or personal well-being or to the safety or well-

---

[5] The state court record contains a report filed by the sheriff that he had restored possession to Capra and McCarthy on July 6, 2012. The report contains the notation: "Renter Home, Apt Full."

being of other tenants. Inability of such TENANT to live independently shall be deemed a violation of this lease, for which the OWNER shall have the right to terminate this lease upon thirty (30) days written notice."

Plaintiff alleges that at all times relevant she was disabled due to a series of chronic infectious illnesses, was "disabled" as defined by the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12102, and that defendants were aware of her disability. During her tenancy, plaintiff became unable to live independently. Plaintiff alleges Capra and McCarthy filed the eviction case against her "inter alia, pursuant to the 'Ability to Live Independently Rider'" and that they changed her locks on July 7, 2012 "pursuant to the 'Ability to Live Independently Rider.'" She alleges they would not have filed the eviction case or actually evicted her but for her disability.

Because there is no diversity of citizenship between the parties, this court's subject matter jurisdiction depends on the complaint's federal claims (Counts I, II, and VIII). The state law claims are only proper in this court if they fall within the court's supplemental jurisdiction, 28 U.S.C. § 1367(a) and the court does not decline to exercise that supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(1)-(4). Accordingly, the court will examine the federal claims first.

The Capra Defendants argue the Rooker-Feldman doctrine precludes plaintiff from bringing the ADA and FHA claims against them in this action. The Rooker-Feldman doctrine bars federal courts other than the Supreme Court of the United States from reviewing judgments entered by state courts in civil litigation. Harold v. Steel, 773 F.3d 884, 885 (7th Cir. 2014). The "doctrine applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court." Id. It bars cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The state court record, of which this court may take judicial notice, see Virnich v. Vorwald, 664 F.3d 206, 209 (7th Cir. 2011), reflects that on October 28, 2011 Ms. Leggett appeared as the defendant in a forcible entry and detainer action and admitted liability. Judgment was entered in favor of Capra and McCarthy in the amount of $2000 plus costs. The judgment also granted them possession of the property effective November 7, 2011. The Capra Defendants contend this judgment is the source of the injury of which plaintiff is complaining in this action.

Plaintiff disagrees arguing that the judgment for possession embodied in the October 28, 2011 judgment expired 120 days after its entry pursuant to Illinois law (735 ILCS 5/9-117). Capra and McCarthy did not enforce the judgment for possession within 120 days. Eventually, they moved for, and on July 2, 2012, obtained, an order from the state court (the 2012 Order) extending the period of enforcement for the judgment for possession. However, this order was subsequently vacated by the state court in its 2013 Order which found the 2012 Order to be void.

4

Plaintiff argues the finding that the 2012 order was void means that it must be treated like it never existed. She maintains that since it was the 2012 Order that purportedly gave Capra and McCarthy the authority to evict her, the voiding of that order means no order of the state court actually existed when they took the actions complained of against her. Because no state court judgment existed, no state court judgment could be the source of the injuries plaintiff is alleging, so, as plaintiff sees it, the Rooker-Feldman doctrine does not apply. Plaintiff is incorrect in thinking no state court judgment exists.

The October 28, 2011 judgment was a final judgment awarding possession and a money judgment. Under Illinois law, a "final judgment is one that fixes absolutely and finally the rights of the parties in the lawsuit; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." Indiana Ins. Co. v. Powerscreen of Chicago, Ltd., 975 N.E.2d 141, 146-47 (Ill. App. 2012) (internal quotation marks and citation omitted.) The October 28, 2011 judgment absolutely and finally fixed the rights of the parties. Capra and McCarthy were entitled to possession of the apartment occupied by plaintiff effective November 7, 2011 and she owed them $2000 plus $192 in costs. No appeal was taken from this judgment and this judgment was never vacated.

Plaintiff argues that pursuant to 735 ILCS 5/9-117 the judgment for possession embodied in the October 28, 2011 judgment expired 120 days after that judgment was entered. However, that is not what Section 9-117 provides. Despite bearing the caption "Expiration of Judgment" (and despite the fact Capra and McCarthy themselves said they were moving "to reinstate expired order for possession") the language of the statute does not provide for expiration of a judgment for possession. Rather, it limits the time in which a judgment for possession may be enforced to 120 days unless the court grants an extension of time to enforce. The statute states: "No judgment for possession obtained in an action brought under this Article may be enforced more than 120 days after judgment is entered, unless upon motion by the plaintiff the court grants an extension of the period of enforcement of the judgment."[6] Therefore, at the time Capra and McCarthy sought to extend the time to enforce the judgment of possession, the judgment had not expired. It was still a valid judgment. 735 ILCS 5/9-117.[7] However, they needed to obtain an

---

[6] Though later in Section 9-117 the following language appears: "The court shall grant the motion for the extension of the judgment of possession." (emphasis added.)

[7] While there do not appear to be any published opinions dealing with this provision, there are orders entered by the Illinois Appellate Court pursuant to Illinois Supreme Court Rule 23(b) which refer to orders entered under Section 9-117 as orders for extension of the period for enforcement of the judgment of possession and treat the original judgment for possession as the final judgment from which an appeal must be taken in the case, even where such extensions for enforcement have been granted under Section 9-117. CitiMortgage, Inc. v. Wade, 2013 WL 3486917 (Ill. App. 2013); Wells Fargo Bank, N.A. v. Grant, 2011 WL 10088327 (Ill. App. 2011). While these Rule 23(b) orders are not precedential they are consistent with this court's reading of Section 9-117.

5

order from the court allowing that judgment for possession to be enforced. When they sought that extension, they failed to comply with the notice requirement of Section 9-117.

Section 9-117 requires a motion seeking an extension to enforce after 120 days to contain a prescribed notice to the party against whom the order of possession is sought to be enforced setting forth facts which the party being evicted must be able to prove to stop the eviction. Capra and McCarthy did not provide this required notice. Section 9-117 does not set out what the consequences of failing to provide this notice are.

As to whether to grant the extension, Section 9-117 provides that the "court shall grant the motion for extension" unless the defendant establishes "that the tenancy has been reinstated, that the breach upon which the judgment was issued has been cured or waived, that the plaintiff and defendant entered into a post-judgment agreement whose terms the defendant has performed, or that other legal or equitable grounds exist that bar enforcement of the judgment."

Ms. Leggett did not appear at the hearing on the motion for extension. [As noted above, plaintiff alleges Capra and McCarthy "never served the notice and motion upon the plaintiff at the subject matter property."] On July 2, 2012, the state court granted the motion for extension of time to enforce the judgment of possession. The sheriff subsequently filed a report that he had restored possession to Capra and McCarthy on July 6, 2012.

In February 2013, several months after the events of July 2012, Ms. Leggett, now represented by counsel, moved to vacate the 2012 Order. On July 2, 2013, in the 2013 Order, the state court granted the motion to vacate finding that the 2012 Order extending the period for enforcing the judgment of possession was void because "the statute was not followed." The 2013 Order also noted that Ms. Leggett "withdraws her request for restoration of the subject premises" and stated that Capra and McCarthy "are entitled to possession of said premises."

To summarize, on October 28, 2011 a judgment for possession was entered by agreement in favor of Capra and McCarthy. This judgment was not appealed and is final. The time for enforcing the judgment of possession absent further court order lapsed. Capra and McCarthy sought and obtained an order granting them an extension to enforce the judgment of possession. They enforced it. One year later, the state court that entered the extension order ruled that the extension order was void because the statute was not followed in obtaining it and vacated the extension order. That state-court order also provided that Capra and McCarthy were entitled to possession, Ms. Leggett having withdrawn her request to be restored to the premises.

Having sorted through the state law and the facts appearing in the record of the state-court proceedings, the court turns to whether plaintiff's action here is an invitation to this court by a state-court loser complaining of injuries caused by a state-court judgment to review and reject that state-court judgment, Exxon Mobil Corp., 544 U.S. at 284, remembering that Rooker - Feldman does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If

6

a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. at 293 (internal quotation marks and citations omitted.); see also, Iqbal v. Patel, No. 14-1959, 2015 WL 859541, * 2 (7th Cir. Mar. 2, 2015). The "Rooker-Feldman doctrine asks what injury the plaintiff asks the federal court to redress." Iqbal, 2015 WL 859541 at * 2.

Plaintiff alleges defendants "filed the eviction case against [her], inter alia, pursuant to the 'Ability to Live Independently Rider,'" "changed the locks on the subject matter property and destroyed or discarded [her] personal belongings and rented furniture therein" pursuant to the "Ability to Live Independently Rider" and that defendants "would not have filed the eviction case or actually evicted [her] but for her disability." She claims defendants actions violated the ADA and the FHA and seeks damages for these violations. In her brief, plaintiff argues that even if both the October 28, 2011 judgment and the 2012 Order "were properly issued, this court need not re-examine those orders to grant Plaintiff relief." She observes that she is not seeking to vacate the eviction judgment but to obtain damages for the unlawful conduct which gave rise to that suit as did the plaintiff in Long v. Shorebank Development Corp., 182 F.3d 548 (7th Cir. 1999). She also argues she is seeking injunctive relief to bar further use of the "Ability to Live Independently Rider" and that the "existence of the Rider predated the judgments, and is unrelated to the judgments for purposes of Rooker-Feldman."

In Long, the court held that Rooker-Feldman did not bar a federal-court action by plaintiff against her former landlord and its attorneys, who had evicted her in an Illinois forcible entry and detainer action, for claims for damages under the FDCPA and under Section 1983. Long noted that while these claims for damages might tangentially touch upon the issues of possession, they would not have been germane to bring in the forcible entry and detainer action so the plaintiff did not have a reasonable opportunity to raise these claims in the state proceeding and, therefore, they were not precluded by Rooker-Feldman. Long, 182 F.3d at 560. However, after Exxon Mobil, "the 'reasonable opportunity' exception to the Rooker-Feldman doctrine is of questionable viability." Kelley v. Med-1 Solutions, LLC, 548 F.3d 600, 607 (7th Cir. 2008). The real question is whether the state-court judgment caused the injuries plaintiff is asking this court to redress. Exxon Mobil Corp., 544 U.S. at 284.

The October 28, 2011 judgment established the right of Capra and McCarthy to evict plaintiff. Her eviction-related injuries (being locked out of her apartment, having her personal property destroyed or disposed of) were caused by this judgment. It was pursuant to this judgment that Capra and McCarthy took the actions causing the injuries plaintiff complains of. The 2012 Order was sought and entered to enforce this judgment. It was the October 28, 2011 judgment the sheriff reported restoring possession to Capra and McCarthy under. While the state court found the 2012 Order void for failure to comply with Section 9-117, that does not change the fact it was the October 28, 2011 order that was being enforced, albeit improperly. While plaintiff argues she is not seeking to vacate the judgment but to obtain damages for the unlawful conduct that gave rise to it, her alleged injuries in Counts I and II all flow from the October 28,

7

2011 judgment. The Rooker-Feldman doctrine bars this court from considering plaintiff's federal discrimination claims.

The existence of the Second Lease does not save plaintiff's claims. Plaintiff alleges that shortly after the October 28, 2011 judgment was entered, she and defendants entered the Second Lease. However, defendants did not attempt to enforce the Second Lease. Rather, they sought to extend the time for enforcement of the judgment for possession they had obtained on the first lease. As noted above, Section 9-117 provides the party being evicted with the opportunity to establish, when a motion to extend the time for enforcement of a judgment for possession has been filed, "that the tenancy has been reinstated, that the breach upon which the judgment was issued has been cured or waived, that the plaintiff and defendant entered into a post-judgment agreement whose terms the defendant has performed, or that other legal or equitable grounds exist that bar enforcement of the judgment." The Second Lease may have been evidence of waiver of the breach or of a post-judgment agreement. However, plaintiff did not pursue this course when she got the 2012 Order vacated. Instead, she withdrew her request to be restored to the property and the 2013 Order provided that Capra and McCarthy "are entitled to possession of said premises." It is the October 28, 2011 judgment that is the cause of the injuries plaintiff alleges in Counts I and II.[8]

Plaintiff argues that her seeking, in Count II, injunctive relief to bar defendants from enforcing the "Ability to Live Independently Rider" in the future predates and is unrelated to the October 28, 2011 judgment and, therefore, is not subject to being barred under Rooker-Feldman. However, plaintiff lacks standing to bring this claim. The doctrine of standing "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009) (emphasis in original) (internal quotation marks and citation omitted.) "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Id. There is no actual and imminent danger of the Rider being enforced against plaintiff. She is not a party to a lease of which the Rider is a part. She is in no danger of the Rider being enforced against her. She is under no threat of suffering an "injury in fact." Id.

The final federal claim (Count VIII) asserted by plaintiff is for violation of the FDCPA. She alleges Capra and McCarthy were "debt collectors" as defined by the FDCPA because "they regularly used instruments of interstate commerce or the mails to collect debts purportedly due

---

[8] As an aside, the court notes that Count I is brought pursuant to Title II of the ADA. Title II by its terms applies only to "public entities." Private landlords who receive subsidized rent payments are not included within the statutory definition of a public entity, 42 U.S.C. § 12131, and do not appear to be proper defendants under it. Hawkins v. Hamlet, Ltd., 296 Fed. Appx. 918, 2008 WL 4660037 (11th Cir. 2008) (unpublished).

the LLC, including without limitation through the use of eviction lawsuits." Alternatively, she alleges the LLC was a "debt collector" under the FDCPA because it used the names of Capra and McCarthy rather than its own name to collect its own debts. She alleges defendants violated the FDCPA by "a) The use of any business, company, or organization name other than the true name of the debt collector's business, company or organization, in violation of 15 U.S.C. § 1692e(14); b) The use or distribution of any written communication . . . which creates a false impression as to its source, authorization, or approval, in violation of 15 U.S.C. § 1692e(9); c) collecting purported debts not authorized by the Plaintiff's lease or permitted by law, in violation of 15 U.S.C. § 1692f."

While defendants do not raise Rooker-Feldman as barring the FDCPA claims, the court has an independent duty to assure its subject matter jurisdiction. Plaintiff alleges defendants violated 15 U.S.C. § 1692e which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of the debt." She alleges particularly violations of subsections (9) and (14) of 15 U.S.C. § 1692e. Rooker-Feldman bars federal suits seeking to recover on a theory that a debt collector made false statements in violation of 15 U.S.C. § 1692e during state litigation. Harold v. Steel, 773 F.3d 884, 885 (7th Cir. 2014) ("More than a decade ago, this court held in Epps v. Creditnet, Inc., 320 F.3d 756 (7th Cir. 2003), that the Rooker-Feldman doctrine bars federal suits seeking to recover on a theory that a debt collector made false statements during state litigation.") In Harold, the plaintiff alleged in his federal case that the defendant had misrepresented the judgment creditor's identity in a state court proceeding garnishing the plaintiff's wages. The court stated: "If Steel's client did not own the judgment, then Harold was entitled to a decision in his favor. No injury occurred until the state judge ruled against Harold." Harold, 773 F.3d at 886. Harold went on to observe that "[s]ection 1692e forbids debt collectors to tell lies but does not suggest that federal courts are to review state-court decisions about *whether* lies have been told. Section 1692e does not even hint that federal courts have been authorized to monitor how debt-collection litigation is handled in state courts." Id. at 887.

Though defendants do not raise Rooker-Feldman as to the FDCPA claims, plaintiff does argue in her brief that Rooker-Feldman does not apply to these claims. She argues that defendants' unlawful activity "related to, inter alia, the Defendants' eviction action against Plaintiff using the names of Capra and McCarthy individually rather than the name of Plaintiff's actual landlord [the LLC]. Because these actions led *to* the judgment, and were not the result *of* the judgment, Rooker-Feldman does not apply." Plaintiff cites Long in support of her argument.

In Long, the court observed that "Long's complaint states that the defendants' conduct violated 15 U.S.C. § 1692e, in part, because the defendants falsely represented the character, amount, and legal status of the debt Long allegedly owed Shorebank by presenting Long with a notice and serving her with a complaint stating she owed Shorebank money – a fact they knew to be untrue." Long, 182 F.3d at 556. The court held this alleged violation of § 1692e "was independent of and complete prior to the entry of the eviction order." Id.

9

Unlike in Harold, where the alleged misrepresentation went to who was entitled to enforce the judgment against Harold, the alleged § 1692e violations here do not implicate the October 28, 2011 judgment. The use of a name by a debt collector that is not its true name or a debt collector using a written communication that creates a false impression about its source is independent of the judgment. Plaintiff, at least in theory, could have been harmed by being confused as to who was attempting to enforce her lease obligations at the time she was served with the complaint. This harm necessarily would have ceased by the time she admitted liability under the complaint and the judgment was entered but the entry of the judgment does not foreclose a claim she was harmed beforehand. Rooker-Feldman does not bar plaintiff's § 1692e claims.

Plaintiff also alleges defendants violated the provisions of the FDCPA set forth in 15 U.S.C. § 1692f(1) by collecting purported debts not authorized by plaintiff's lease or permitted by law. To the extent these allegations encompass the right to possession or the amounts awarded in the October 28, 2011 judgment, they are barred by Rooker-Feldman as these injuries were caused by the state-court judgment. Exxon Mobil Corp., 544 U.S. at 284.

Looking at the § 1692e claims that remain after the application of Rooker-Feldman, they are barred by FDCPA's one-year statute of limitations. 15 U.S.C. § 1692k(d).[9] The alleged violations occurred outside the limitations period. The forcible entry and detainer complaint was filed in October 2011 and a final judgment on it was entered October 28, 2011. As noted above, only § 1692e claims that predate the judgment are not barred by Rooker-Feldman. This case was filed August 15, 2013.

Even if the statute of limitations did not bar the FDCPA claims, plaintiff's claims would fail for other reasons as well. The FDCPA provides the "term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another." 15 U.S.C. § 1692a (6). The "term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." Id. "The term does not include – (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor; (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." Id.

---

[9] Defendants did not raise the statute of limitations defense, but the court may do so sua sponte. See King v. One Unknown Federal Correctional Officer, 201 F.3d 910 (7th Cir. 2000) (affirming dismissal where district court raised limitations defense sua sponte.)

10

Plaintiff relies on an Illinois appellate court case, American Management Consultants, LLC v. Carter, 915 N.E.2d 411 (Ill. App. 2009), saying it holds that lessors are required to comply with the FDCPA in the context of forcible entry and detainer actions. This reliance is misplaced. The opinion relied on by plaintiff in that case was not a majority opinion but only the opinion of one judge. After the appellate court case was decided, Carter brought a federal case seeking damages for the violation of the FDCPA which had been noted in the appellate court opinion. The federal case reached the Seventh Circuit Court of Appeals in Carter v. AMC, LLC, 645 F.3d 840 (7th Cir. 2011). The Seventh Circuit noted, in reference to the Illinois appellate court opinion, that the "opinion of one member of a three-judge panel does not resolve any issue." Carter, 645 F.3d at 842. In the federal case, the Seventh Circuit noted that the district court had disagreed with the opinion of the Illinois appellate court judge and properly concluded that an "entity that tries to collect money owed to itself is outside the FDCPA." Id. A lessor, therefore, is not subject to the FDCPA in taking actions to collect rent owed to it. Id. The LLC, simply as a lessor, was not subject to the FDCPA.

McCarthy also was not a "debt collector" under the FDCPA. The FDCPA "excludes not only the original creditor but also any person who tries to collect a debt that 'was not in default at the time it was obtained by such person.' 15 U.S.C. § 1692a(6)(F)(iii)." Id. at 843. A property manager is excluded from the definition of "debt collector" under the FDCPA because a property manager "obtains" a debt at the time "the lease begins, which necessarily precedes default." Id. Here, the lease clearly lists McCarthy as the property manager. As property manager, McCarthy "obtained" the debt prior to default so he is not a debt collector under the FDCPA, owed plaintiff no duty under it, and therefore is not liable to her for violating it. Id.

Plaintiff alleges the LLC is a "debt collector" because it used the names of Capra and McCarthy rather than its own name to collect its own debts. However, the statute only includes within the term "debt collector" a creditor who uses a name other than his own "which would indicate that a third party is collecting or attempting to collect" the debt. 15 U.S.C. § 1692a (6).

The printed name of the lessor on the first page of the lease is "Louis Capra & Associates." The "Lessor" signature line contains the signature "Louis Capra." Numerous riders and attachments filed by plaintiff as exhibits to the complaint are also signed on the line identifying the lessor with the name "Louis Capra." A document captioned "Termination of Tenancy" has "Louis Capra & Associates" typed above a signature line. The signature line contains the signature "Louis Capra" and the word "Owner" is typed under the signature line. A document captioned "Crime Free Lease Addendum" contains the signature "Louis Capra" on a line designated "Owner/Manager's Signature."

Louis Capra was the name used in dealing with plaintiff at the origination of the tenancy as evidenced by the lease and its riders and attachments which all were executed by Louis Capra. A "creditor may use any established name under which it is known, to collect its debts from a particular debtor as long as it has consistently dealt with such debtor since the beginning of the credit relationship at issue under such name." Dickenson v. Townside T.V. & Appliance, Inc.,

770 F. Supp. 1122, 1128 (S.D.W.V. 1990). The purpose of the provision is to keep the debtor from being deceived into believing some third party other than the creditor with whom she has been dealing has been enlisted to collect the debt. Id. The use of Louis Capra's name was not such a deception as Capra was the person plaintiff dealt with from the beginning. The use of Capra's name did not make the LLC a debt collector.

As to the LLC's alleged use of the name of McCarthy as a purported third person collector, plaintiff has not alleged any facts to support the claim. McCarthy was the clearly identified property manager. Plaintiff has not alleged any facts that would indicate he was acting not as the property manager but as a third person collector. McCarthy enforcing a lease in which he is identified as the property manager does not create the deception that some third party other than the creditor with whom plaintiff has been dealing has been enlisted to collect the debt. Dickenson, 770 F. Supp. at 1128.

Additionally, as to Capra and McCarthy, the allegations concerning the use of a name other than their true names fails as to them because plaintiff has not alleged any instance where Capra or McCarthy ever used any other name than their own. Similarly, plaintiff has not alleged any facts that would indicate the state court complaint or any other "written instrument" used by Capra and McCarthy in connection with the collection of a debt created any impression that it came from anyone but them. The documents plaintiff attached to her complaint and the state-court record show Capra and McCarthy used only their own names. Plaintiff's FDCPA claims must be dismissed.

McCarthy's motion to dismiss asserts his bankruptcy discharge bars plaintiff's claims against him. McCarthy filed a Chapter 7 bankruptcy petition on April 17, 2013.[10] The bankruptcy trustee filed a "Report of No Distribution" on May 24, 2013 reporting there was no property of the debtor, McCarthy, available for distribution to creditors. On July 23, 2013, a discharge order was entered in McCarthy's bankruptcy case granting him a discharge of his debts. McCarthy did not list plaintiff as a creditor holding a claim against him in his bankruptcy schedules. Plaintiff's claims against McCarthy, as alleged in her complaint, arose prior to McCarthy filing his bankruptcy petition.

Section 523(a)(3) of the Bankruptcy Code provides that a debt is not discharged by the general discharge order in a bankruptcy case where the debt was not listed in the debtor's bankruptcy schedules in time for the creditor to file a timely proof of claim (11 U.S.C. § 523(a)(3)(A)) or if the debt is of a type that is non-dischargeable under Bankruptcy Code Section 523(a)(2),(4),or (6), in time for the creditor to file a timely complaint to determine dischargeability of the debt. 11 U.S.C. § 523(a)(3)(B). McCarthy argues in his opening brief that where, as here, the trustee filed a "no asset" report and no claims bar date was set, Section

---

[10] The court may take judicial notice of bankruptcy court proceedings. DeliverMed Holdings, LLC v. Schaltenbrand, 734 F.3d 616, 622 n.1 (7th Cir. 2013).

523(a)(3)(A) is not grounds for finding an unscheduled debt non-discharegable, because the creditor would receive no distribution from the estate (as there is nothing in the estate to distribute) and the absence of a bar date means the creditor was not denied an opportunity to file a timely claim. Plaintiff does not dispute this argument but contends the debts McCarthy owes plaintiff are non-dischargeable under variously Section 523(a)(2)(A), (4), & (6) and, therefore, Section 523(a)(B) excepts them from discharge. McCarthy replies that plaintiff's complaint does not allege any claims that could be found non-dischargeable so the Section 523(a)(3)(B) exception to discharge does not apply.

"All that needs to be shown to establish a right to relief under section 523(a)(3)(B) is that the debt in question was unscheduled and the creditor did not have notice or actual knowledge of the bankruptcy in time to file a claim and a request for a determination that the debt was nondischargeable." In re Smith, 582 F.3d 767, 777 (7th Cir. 2009). "Whether or not the debtor's failure to schedule the debt was deliberate is irrelevant." Id. Plaintiff argues McCarthy was aware of plaintiff's claims because the attorney representing him in the state court matter was aware of these claims. However, whether McCarthy knew about plaintiff's claims is not the relevant inquiry. Since it is undisputed McCarthy did not schedule plaintiff's claims in his bankruptcy petition, the relevant questions are 1) did plaintiff know about the bankruptcy in time to file a complaint to determine dischargeability and, if not, 2) are the claims of a type that are non-dischargeable under Section 523(a)(2), (4), or (6)?

McCarthy does not contend plaintiff knew he had filed bankruptcy so the only remaining question is whether the claims plaintiff is advancing against McCarthy in this case are the type that would be non-dischargeable under Section 523(a)(2), (4), or (6). Looking at the federal claims, plaintiff does not argue her FDCPA claims (Count VIII) are excepted from discharge. The only federal claims she argues are non-dischargeable are those in Counts I (ADA) and II (FHA). Accordingly, the claims in Count VIII alleging violation of 15 U.S.C. § 1692e, as to McCarthy, do not survive his bankruptcy. Because the court lacks subject matter jurisdiction under the Rooker-Feldman doctrine over plaintiff's other federal claims against McCarthy, the court need not address whether those claims are excepted from McCarthy's bankruptcy discharge.

Because all of the federal claims are being dismissed, the court declines to exercise supplemental jurisdiction over the state-law claims and dismisses them without prejudice. 28 U.S.C. § 1367(c)(3); Harvey v. Town of Merrillville, 649 F.3d 526, 532 (7th Cir. 2011).[11] The state claims involve the interpretation and application of state statutes that are best left to the state courts.

---

[11] State courts have concurrent jurisdiction to determine whether or not a debt is discharegable in bankruptcy pursuant to 11 U.S.C. § 523(a) so the dischargeability of the state-law claims as to McCarthy can be litigated in any state proceeding that may be brought. Eden v. Chapski, 405 F.3d 582, 586 (7th Cir. 2005).

13

For the foregoing reasons, plaintiff's ADA (Count I) and FHA (Count II) claims are dismissed for lack of subject matter jurisdiction. Plaintiff's 15 U.S.C. § 1692f(1) claim (set forth in Count VIII), to the extent it involves the right to possession or amounts awarded in the October 28, 2011 state-court judgment, is dismissed for lack of subject-matter jurisdiction. Plaintiff's remaining FDCPA claims (set forth in Count VIII) are dismissed with prejudice for failure to state a claim upon which relief can be granted. The court declines to exercise supplemental jurisdiction over the state-law claims (Counts III, IV, V, VII, and IX) and they are dismissed without prejudice. This case is terminated.

Date: 4/10/2015              ENTER:

_____
United States District Court Judge

Electronic Notices. (LC)